864 P.2d 654

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Melvin J. ATKINSON, Defendant–Appellant.**

**No. 20416.**

Court of Appeals of Idaho.

Nov. 17, 1993.

Petition for Review Denied Jan. 6, 1994.

Loveless, Neilsen & Neilsen, Pocatello, for appellant. Michael B. Nielsen, argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson, argued.

PERRY, Judge.

Melvin J. Atkinson was found guilty of aggravated battery. I.C. §§ 18–903(c) and 18–907(b). Atkinson made a motion for a mistrial pursuant to I.C.R. 29.1., which was denied by the district court. Atkinson appeals his conviction, claiming that certain testimony presented at trial warranted a mistrial. For the reasons stated below, we affirm.

## FACTS AND PROCEDURE

In May of 1992, Atkinson, along with four other men, climbed aboard a boxcar on a train headed west from Pocatello. The four other men included Sam Thurman, Heinz Eppelman, Donald Hastings and the victim in this case, William "Tennessee" Nothey. After the train was underway and traveling approximately 40 to 50 miles per hour, Eppelman and Hastings observed Atkinson throw Tennessee out the door of the boxcar while in Power County. Tennessee testified that he recalled being manhandled and later waking alongside the

railroad tracks, bleeding from head wounds and barely able to walk or breathe.

After Atkinson threw Tennessee from the train, he attempted to eject Eppelman as well. Eppelman was able to avoid being thrown from the train and retreated to a corner. Sometime later, however, while the train was in Lincoln County, Atkinson succeeded in throwing Sam from the train, killing him. In response to Atkinson throwing Sam from the train, Eppelman, who was a friend of Sam, confronted Atkinson. During the confrontation, Eppelman kneed or pushed Atkinson in the chest and Atkinson threatened him with a knife. Fearing he would be thrown off next by Atkinson, Eppelman jumped from the train. Atkinson was charged with aggravated battery, a felony, under I.C. §§ 18–903(c) and 18–907(b) in Power County for throwing Tennessee off the train.[1]

During the state's direct examination of the victim in this matter, Tennessee related the following events that occurred before the five men boarded the train:

A. And the guy that died and I went for a liquor run; and we went up here to a deli, which is located across from the park. And I, I had the money for a twelve-pack for supposedly me; Don; and him, Butch [Atkinson]. And the kid was buying a—the kid that died, he bought a quart or two quarts of beer. I'm not sure. But whatever it was, he was short some change on it, you know; and I helped him get it. Then we came back. We drank the beer.

Tr., p. 42. Counsel for Atkinson made no objection to the testimony. The court, however, requested that the attorneys approach the bench to discuss this line of testimony concerning Sam's death.

Later in the trial, Hastings was called to testify for the state. During direct examination, Hastings testified that at Mountain Home only he and Atkinson were left on the train. He went on to testify that both he and Atkinson were taken into custody at that time. The defense objected to the line

---

1. In a separate matter not pertinent to this appeal, Atkinson was charged with the death of Sam in Lincoln County.

of questioning involving the incident that led to the death of Sam. As a result, the state did not question Hastings any further concerning Sam's death.

Prior to Eppelman's testimony for the prosecution, the trial court instructed Eppelman that testimony regarding Sam being thrown from the train, and his subsequent death, would not be allowed. During cross-examination, however, in response to a question by defense counsel, Eppelman responded "After he [Atkinson] threw Sam off." Defense counsel moved for a mistrial pursuant to I.C.R. 29.1. After argument and consideration, the district court denied the motion for a mistrial.

The jury found Atkinson guilty of aggravated battery for throwing Tennessee off the train. On appeal, Atkinson asserts error in the denial of his motion for a mistrial following statements of Tennessee and Eppelman regarding Sam's ejection from the train and his subsequent death. We conclude that the district court correctly denied this motion and, therefore, we affirm.

## STANDARD OF REVIEW

■ In criminal cases, motions for mistrial are governed by I.C.R. 29.1, which provides in part that "[a] mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." The decision whether to grant a mistrial rests within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *State v. Tolman*, 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1992); *State v. Talmage*, 104 Idaho 249, 254, 658 P.2d 920, 926 (1983); *State v. Ramsbottom*, 89 Idaho 1, 10, 402 P.2d 384, 389 (1965). This Court has held that the question on review is not whether the trial court reasonably exercised its discretion under the circumstances existing when the motion was made. The question is whether the event or events which brought about the motion for mistrial constitute reversible error when viewed in the context of the en-

tire record. *State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983).

## ANALYSIS

A. *Was the evidence admissible under I.R.E. 404(b)?*

The first issue for our consideration is whether the challenged testimony was admissible under I.R.E. 404(b) and 403. If this evidence was admissible, it would not be error for the court to allow it in and thus the motion for mistrial would be properly denied. Given the nature of the evidence, and its place in the order of testimony, however, we conclude that the evidence was not admissible under the Idaho Rules of Evidence.

■ Generally, evidence of other crimes, wrongs or acts is inadmissible for the purpose of showing a person's character to prove that he or she acted in conformity therewith. I.R.E. 404(b); *State v. Pizzuto*, 119 Idaho 742, 750, 810 P.2d 680, 688 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *and overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979). If the evidence is offered for a purpose other than propensity, it may be admitted. Permissible purposes include knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. I.R.E. 404(b). Even though offered evidence may fit into one of these categories, it still may be excluded if the trial court concludes that the threat of unfair prejudice substantially outweighs its probative value. I.R.E. 403; *Pizzuto*, 119 Idaho at 751, 810 P.2d at 688–89. Therefore, in order to admit evidence of other acts, crimes, or wrongs, the trial court must initially determine whether the evidence is relevant to a material issue other than propensity. If the evidence is deemed relevant, then the court must, in the exercise of its discretion, determine whether the probative value of the evidence is substantially outweighed by the danger of causing unfair prejudice to the defendant.

I.R.E. 403; *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991).

Whether evidence is relevant is an issue of law. *See* I.R.E. 401 *and* 402; *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993) *petition for review pending; State v. Maylett*, 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct.App.1985) (Burnett, J., concurring). Therefore, when considering a trial court's admission of evidence of prior misconduct, we exercise free review of the trial judge's admissibility determination under I.R.E. 404(b). However, when reviewing the determination that the probative value of the evidence is not outweighed by unfair prejudice—the second step of the analysis—we use an abuse of discretion standard. *State v. Rhoades*, 119 Idaho 594, 603, 809 P.2d 455, 464 (1991); *State v. Medrano*, 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App.1992).

Under the analysis outlined above, our first task is to determine whether evidence that Atkinson threw Sam from the train was admissible under I.R.E. 404(b). If the evidence was inadmissible, then we need not address whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under I.R.E. 403.

The evidence complained of in this case was not offered by the prosecution, but instead came out during cross-examination by defense counsel of one of the state's witnesses. It was not an attempt by the state, through the direct examination of its witnesses, to bring into question the character of the defendant, Atkinson. The potential 404(b) exceptions, under which this evidence could arguably have fallen, were intent, common scheme or plan, and absence of mistake or accident. These issues, however, were not in question at the time the statements were made. The testimony was not offered as evidence of Atkinson's intent to commit the crime charged, but was merely the relating of a similar incident. Likewise, up to the point of trial, there were no claims that the charged conduct was the result of an accident or mistake. The state, earlier in the trial, recog-

nized that these theories were probably pursuable in rebuttal testimony, if the defendant put them in issue as part of his case. Therefore, the statements made by Eppelman during defense counsel's cross-examination were not admissible under 404(b) at the time they were elicited. It is not necessary then for this Court to address the related value of such testimony under Rule 403. However, we next must ask whether this error required granting of Atkinson's motion for mistrial.

### B. *Was the challenged testimony the result of invited error?*

The second question for our consideration is whether the testimony of Eppelman was invited error. If it was invited, it cannot be regarded as reversible error. We conclude that it was invited, and therefore the mistrial was properly denied.

Idaho courts have long held that "one may not successfully complain of errors one has consented to or acquiesced in. In other words, invited errors are not reversible." *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Owsley*, 105 Idaho 836, 673 P.2d 436 (1983). The doctrine of invited error applies to estop a party from asserting an error when his own conduct induces the commission of the error. *People v. Perez*, 23 Cal.3d 545, 153 Cal.Rptr. 40, 591 P.2d 63, 66, n. 3 (Cal.1979).

Prior to Eppelman's testimony, counsel for the state instructed Eppelman that he was not to bring up the fact that Sam had been thrown from the train. The following exchange took place outside the presence of the jury:

[BY MR. BOOMER, COUNSEL FOR THE STATE] But I'm going to have to ask you and, in fact, I think the Court will instruct you not to mention the fact that Sam was thrown off the train or the fact that Sam died as a result of being thrown from the train.

A. Deal with the first incident only?

Q. Beg your pardon?

A. Deal with the first incident?

Q. Yes. The first incident involving Mr. Nothey.

THE COURT: Mr. Eppelman, can you agree to do that?

THE WITNESS: Yes, sir.

THE COURT: All right. Now, unless you're specifically asked a question which would—unless you're specifically asked a question about Sam or the circumstances involving his being thrown or falling from the train and his death, you are not to bring up that subject.

THE WITNESS: Well, this, this is after that.

THE COURT: Excuse me?

THE WITNESS: The stopping point of today's—

THE COURT: Right.

THE WITNESS: —is when he went off, when Tennessee went off?

THE COURT: Exactly.

MR. BOOMER: Your Honor, I did intend to carry that one step further and get into the altercation between, between the defendant and Mr. Eppelman, which concluded with Mr. Eppelman jumping from the train.

THE WITNESS: That would involve the whole thing then.

Q. BY MR. BOOMER: Because that was right after Sam got thrown off?

A. Yeah. That was leading, that was—yeah, the events took place led up to that, yeah.

THE COURT: Well—

MR. BOOMER: Your Honor, I guess—well, one thing for sure that I wanted to get in was the, the altercation immediately after Tennessee was thrown from the train where there was a brief struggle and Mr. Eppelman, as I understand it, went to one location and the defendant went to another.

THE COURT: Well, let's go ahead and bring the jury back in.

Mr. Nielsen [defense counsel], are you satisfied with that warning?

MR. NIELSEN: That's already been testified to. I don't think there's any problem.

Tr., pp. 156–157.

Thus, the witness clearly indicated that if he was going to be asked about the altercation between himself and Atkinson, he would have to include Sam's ejection from the train because it was part of the entire sequence of events. The court also instructed Eppleman that he was not to bring up the subject unless specifically asked a question about the circumstances involved.

Even during the exchange that brought out the challenged testimony, it appears the witness was trying to avoid discussing Sam but was required to do so in order to respond to inquiry by defense counsel. At trial, after eliciting Eppelman's account of Tennessee being thrown from the train, defense counsel began questioning the witness about what happened afterward:

Q. ... What did you do then? You asked Sam, "What are we going to do?"

A. After he [Tennessee] went off?

Q. Uh-huh. (Affirmative.)

A. Yes, sir.

Q. What did you do next?

A. Just sat there and was like—I was thinking, you know, what are we going to do, to myself. Like, what if he comes at me, you know.

Q. You didn't approach [Atkinson] and push him in the chest?

A. No sir. He called me, about two minutes afterwards, he called me over, you know, to where he was by the door and grabbed me by both shoulders and attempted to throw me out. As he was doing this, he was laughing. And I'm like, man, you're crazy. And I went back to the corner.

Q. Well, for your benefit, there was some testimony from Mr. Hastings that at some point you went up and pushed [Atkinson] in the chest. Do you recall that?

A. No, sir.

Q. Okay. So he would be mistaken?

A. Yes, sir. I didn't—at this time I did not do that.

Q. Did you at any time?

A. Yes, sir.

Q. When?

A. After he threw Sam off.

Tr., pp. 201–202.

The witness gave an accurate, fair and responsive answer to defense counsel's question of "When?" Defense counsel subsequently admitted on the record that he did not know what the witness was going to answer in response to that question, stating "I have to inform the Court that I did not know what the answer to this question was going to be. I did not know the sequence of events, either." Defense counsel's failure to know the answer to the question or his misunderstanding of the sequence of events does not excuse the invited nature of the error. A misstep on dangerous ground, where counsel has voluntarily ventured but is unsure of possible responses, may result in invited error, and if so, cannot then be grounds for a mistrial. Therefore, the trial court properly denied Atkinson's motion for a mistrial.

Atkinson cites *State v. Simonson*, 112 Idaho 451, 732 P.2d 689 (Ct.App.1987), for the proposition that inadvertence makes no difference in the prejudicial impact and therefore does not serve as a proper ground for admission. However, in *Simonson*, the testimony did come in under questioning by the defense, but the answer given was not responsive to the question asked. Defense counsel in *Simonson* asked a specific question expecting a certain answer when the witness instead volunteered evidence of a prior guilty plea. This Court ruled in *Simonson* that the testimony was not, therefore, invited error. In this case, the answer given was responsive, and, thus, the error was invited, distinguishing *Simonson*.

## CONCLUSION

The challenged testimony was not admissible under I.R.E. 404(b) at the time it was given. The testimony was nevertheless the product of invited error. It is, therefore,

not reversible error. The district court properly denied Atkinson's motion for a mistrial, and the judgment of conviction is affirmed.

WALTERS, C.J., and LANSING, J., concur.