961 P.2d 1203

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Samuel M. LEE, Defendant–Appellant.**

**No. 23816.**

Court of Appeals of Idaho.

April 3, 1998.

Rehearing Denied May 12, 1998.

Review Denied July 2, 1998.

Nancy L. Callahan, Gem County Public Defender, Emmett, for appellant. Nancy L. Callahan argued.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney Gener-

al, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

Samuel M. Lee appeals from his judgments of conviction and sentences entered following a jury trial. Lee contends that the jury deliberation process was tainted by undue pressure and, consequently, the district court erred when it denied his motion for mistrial.

## I.

### FACTS AND PROCEDURE

A car was stolen from a parking lot in Emmett by an unknown man and woman. The car was then sold to Juan Ramirez and Vincente Zapata. Approximately one month later, the police arrested Ramirez and Zapata, and they led the police to Lee and Melody Logan. Lee was charged with burglary, I.C. § 18–1401; grand theft, I.C. §§ 18–2403(1) and –2407(1)(b); and was alleged to be a persistent violator, I.C. § 19–2514.

Lee and Logan went to trial before a jury. At trial, a man who witnessed the crime from his parked car testified that he could positively identify Logan as the woman who stole the car. The witness was unable to positively identify Lee as the man who aided Logan in the theft. The witness described the man who was with Logan, and Lee fit that description. However, the witness stated that he could not definitely identify Lee because he did not watch the man as closely as he watched the woman.

Ramirez and Zapata both testified that Lee was with Logan when she sold them the car. Ramirez testified that he saw Lee and Logan in a bar in Caldwell. Logan asked if Ramirez was interested in buying a car, and Ramirez and Zapata left with Logan to look at the car. They bought some gas, Ramirez and Zapata gave Logan money for the car and Logan signed some papers. Later that night Logan and Lee received a ride home in the stolen car.

Following presentation of the evidence, the jury began deliberations at 12:10 p.m. on the second day of trial. During the next four hours the jury made two written communications to the district court. The first note regarded the testimony of a witness and is irrelevant to this appeal. In the second note the jury indicated that it had found Lee and Logan guilty by a vote of eleven to one.[1] The district court instructed the jury in writing to continue deliberating.

At 4:20 p.m. the jury informed the district court that it had reached a verdict. The proceedings were delayed because Lee and Logan absconded. The court reconvened at 5:20 p.m. in their absence. The jury foreperson announced that the jury had reached a unanimous guilty verdict. Defense counsel requested that the jury be polled. Each juror indicated that the guilty verdict was his or her true verdict, until juror number nine (Juror 9) was polled. When asked if the verdict was her true verdict, Juror 9 responded, "I have a problem with it." The district court instructed the clerk to continue polling the rest of the jury, and it was revealed that Juror 9 was the lone dissenting juror.

The district court then asked if either of the attorneys wished to question Juror 9, and Lee's counsel responded that she did. The following dialogue ensued:

[Lee's Counsel]: [Juror 9], would you please tell the court—did you come to a unanimous verdict for the purposes of coming up . . . with a unanimous verdict?

[Prosecutor]: Your Honor, I would object to the question. I think the issue is whether or not the verdict is [a] unanimous decision of the twelve jurors, and that is what the inquiry should be, if any.

[Court]: I'll sustain the objection.

. . . .

[Lee's Counsel]: [Juror 9], what was your problem with the verdict?

[Juror 9]: That one of the defendants was unidentified, and in order to come to this conclusion was that they had said that they

---

1. A defendant cannot be found guilty by a jury in Idaho unless the verdict is unanimous. Idaho

Criminal Rule 31.

had always been together. And if I went against one it would sink the other, but I was not sure.

[Court]: Let me go back and ... there are two different verdicts, okay. So I am going to have the clerk ask you the question first on the verdict of Melody Logan, you can respond to that verdict.

. . . .

[Clerk]: Okay. Is this your true verdict on Melody Logan?

[Juror 9]: My true verdict is I don't believe everything. There wasn't sufficient evidence for me to convict, and to come to this decision.

[Prosecutor]: Your honor, I am going to object to this proceeding. I—I think that the issue is whether or not the verdict is unanimous, and I don't know about the inquiry of a juror beyond the point of whether or not she agreed with the verdict.

. . . .

[Court]: Well, we are—the defense is entitled to poll the—the jury, and—I haven't gotten—I have gotten a problem with one juror in terms of whether or not that is her verdict, and I am trying to ascertain what that is. I am going to ask then, as to the verdict of Samuel Lee, and have the question posed to you.

. . . .

[Juror 9]: He was unidentified, so I had to—

[Court]: No, please, just answer the question as the clerk presents it to you.

[Juror 9]: Oh, okay. Excuse me.

[Court]: In other words, we have got two verdicts, one for Samuel Lee, and one for Melody Logan; and they have come back as being guilty on both counts, burglary and grand theft. The question then, is that your true verdict?

[Juror 9]: No.

[Lee's Counsel]: Your Honor, I move for a mistrial.

[Court]: I am going to go ahead and—and excuse the jury for further proceedings with the attorneys, and we will take this matter up out of the presence of the jury.

After hearing argument by counsel, the district court called the jurors back in and stated:

Members of the jury, the court is going to go ahead and dismiss you for tonight, and then have you return tomorrow at 9:00 a.m. to continue your deliberations.

The main reason—the main reason is that we have two defendants. We have multiple felony counts. And in these types of situations it's not unreasonable to have the jury deliberate for more than four or five hours.

And so I don't think, based on the amount of energy and effort you have expended today, that it would be fruitful to continue tonight, and so what the court will do is excuse you for the evening and have you return at 9:00 a.m. tomorrow morning. Thank you.

The jury began deliberations at 9:00 a.m. the next morning. At 12:22 p.m. court reconvened and the jury announced its unanimous guilty verdict on burglary and grand theft.[2] The jury was polled and Juror 9 answered that the verdict read was her true verdict.

On November 26, 1996, the district court entered judgments of conviction and sentenced Lee to concurrent, unified sixteen-year terms, with four years fixed. On December 5, 1996, Lee filed a motion for a new trial, citing juror misconduct as the basis for the motion. The state filed a motion for a more definite statement concerning the issues raised in Lee's motion for a new trial. Lee filed an amended motion, asserting that a new trial should be granted because the jury should not have been instructed to continue deliberating after Juror 9 had been singled out as the sole dissenting juror. Lee alleged that Juror 9 had been subjected to extreme ridicule when deliberations began the second day.[3] The district court held a

---

**2.** Thereafter, Lee was also found to be a persistent violator.

**3.** Lee's counsel filed an affidavit by Juror 9 with the amended motion for a new trial. The district

court determined that Idaho Rule of Evidence 606(b) prohibited the introduction of the juror's affidavit. Rule 606(b) states, in part, that "a juror may not testify as to any matter or state-

hearing and denied Lee's motion, finding that Lee failed to assert any ground under I.C. § 19–2406 upon which the district court could grant a new trial. The district court further determined that Juror 9 was not coerced by the district court's instructions. Lee appealed.

## II.

## DISCUSSION

Lee asserts that the district court erred when it denied his motion for a mistrial. Lee argues that the jury deliberation process was tainted, which violated his due process right to a fair trial. The state claims that Lee's appeal is untimely and also that any error below was invited by Lee's counsel. We affirm.

### A. Timeliness of the Appeal

■ The state asserts that this Court is without jurisdiction to hear the issue raised by Lee on appeal, and that we should dismiss the case, because Lee failed to comply with Idaho Appellate Rule 14 and I.C. § 19–2406. Under I.A.R. 14 a notice of appeal must be filed within forty-two days of any judgment, but that time period can be tolled if a motion which could affect the judgment is filed within fourteen days of the judgment. The state claims that the grounds for a new trial under I.C. § 19–2406 do not include the grounds asserted in Lee's motion for a new trial and also that the grounds listed in I.C. § 19–2406 are exclusive. Thus, the state argues that Lee's motion for a new trial lacked merit and did not toll the time period to file a notice of appeal. Therefore, the state contends the appeal is untimely as to the issue presented.

■ Idaho Appellate Rule 14 provides, in pertinent part:

(a) Appeals From the District Court. Any appeal as a matter of right from the district court may be made only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment, order or decree.... The time for an appeal from any criminal judgment, order or sentence in an action is terminated by the filing of a motion within fourteen (14) days of the entry of the judgment which, if granted, could affect the judgment, order or sentence in the action, in which case the appeal period for the judgment and sentence commences to run upon the date of the clerk's filing stamp on the order deciding such motion.

A motion for a new trial extends the time for appeal from the judgment and is consistent with the purpose and intent of I.A.R. 14. *State v. Poland,* 116 Idaho 34, 36, 773 P.2d 651, 653 (Ct.App.1989). We disagree with the state's premise that only new trial motions that fall within the parameters of I.C. § 19–2406 toll the appeal period. The I.A.R. 14 tolling provision for motions filed within fourteen days after judgment is not limited to motions which are later determined to be meritorious.[4]

Therefore, we conclude that Lee's notice of appeal was timely filed, and we have jurisdiction to hear his issue on appeal—whether the district court erred in instructing the jury to continue deliberations, thereby denying Lee's motion for a mistrial.

### B. Invited Error

■ The state contends that counsel for Lee invited the alleged error, if any, when counsel questioned Juror 9 regarding her problem with the verdict. The doctrine of invited error applies to estop a party from

---

ment occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict."

4. In any event, Lee's motion falls within one of the circumstances in which a motion for a new trial can be granted. Under I.C. § 19–2406(5), a new trial may be granted when the court "has erred in the decision of any question of law

arising during the course of trial." In his amended motion for a new trial, Lee argued that the district court erred when it instructed the jury to continue deliberations after Juror 9 had been singled out as the lone dissenter. This is an assertion that the district court erred regarding a question of law. Therefore, Lee's motion could be construed as within the ambit of I.C. § 19–2406(5).

asserting an error when his or her own conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). One may not complain of errors one has consented to or acquiesced in. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985).

Lee asserts that, under the totality of the circumstances, the district court's actions created an atmosphere which coerced Juror 9 into abandoning her convictions and agreeing with the guilty verdicts. Lee does not claim that the actions of the district court inviting Lee's counsel to question Juror 9 constituted error. Rather, Lee specifically contends that the district court erred when it continued to poll the jury, which had the effect of singling out Juror 9 as the lone dissenting juror, and then ordered the jury to continue its deliberations. Therefore, the state's claim, that Lee invited the error which he now complains of, misstates the thrust of Lee's issue on appeal and is without merit.

## C. Due Process and a Fair Trial

■ Lee argues that he was denied his right to a fair trial because the jury deliberation process was tainted when the district court instructed the jury to continue deliberations after the lone dissenting juror had been identified. Lee asserts that, under the totality of the circumstances, undue pressure was placed upon Juror 9 to reach a unanimous verdict. The district court, however, concluded that "the actions of the court in requiring the jury to continue deliberating after the numerical division was revealed did not in any way coerce any juror to change his or her verdict."

■ Under Idaho Criminal Rule 29.1 a motion for a mistrial may be declared upon motion of the defendant, "when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." The decision whether to grant a mistrial rests within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *State v. Tolman*, 121 Idaho 899, 902, 828 P.2d 1304,

1307 (1992); *Atkinson*, 124 Idaho at 818, 864 P.2d at 656.

■ "Jury verdicts occupy an exalted place in our criminal justice system." *State v. Clay*, 112 Idaho 261, 263, 731 P.2d 804, 806 (Ct.App.1987). When a properly instructed jury makes a finding of guilt upon the evidence presented, its verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clay*, 112 Idaho at 263, 731 P.2d at 806. We may not substitute our judgment for that of the jury regarding the credibility of witnesses, the weight of testimony, or the reasonable inferences to be drawn from the evidence. *Clay*, 112 Idaho at 263, 731 P.2d at 806. However, this vast deference we give to jury verdicts "can be justified only if the integrity of the jury deliberation process is scrupulously maintained." *Id.* The constitutional guarantee of due process demands that an accused receive a fair and impartial jury; this guaranty is violated if jury deliberations are tainted by undue pressure. *Id.*

Although the specific issue before us is a matter of first impression in Idaho, there are generally three approaches appellate courts have adopted in this context. The Eleventh Circuit has adopted a per se rule, determining that anytime a trial court inquires into the numerical split of the jury, or continues polling the jury after a dissenting juror has been identified, the verdict is not unanimous and must be overturned. *United States v. Spitz*, 696 F.2d 916 (11th Cir.1983) (Under Federal Rule of Criminal Procedure 31(d) when the jury is polled and it is discovered that the verdict is not unanimous, the proper procedure is to either discharge the jury or instruct it to further deliberate. It is per se error to continue polling the jury to determine the numerical division). *See also Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) (when jury has reported it is deadlocked, it is grounds for reversal for the trial court to inquire into the numerical division of the individual jurors).

Other courts have applied an abuse of discretion standard in reviewing the actions of the trial court. *United States v. Fiorilla*, 850

F.2d 172 (3d Cir.1988) (court refused to follow per se rule established in *Spitz* and determined that trial court's instruction for the jury to continue deliberating, even though eleven to one division had been revealed, was not an abuse of discretion); *Massachusetts v. Fernandes*, 30 Mass.App.Ct. 335, 568 N.E.2d 604 (1991) ("Where the one juror stated she did not agree with the verdicts, it was well within the trial judge's discretion either to declare a mistrial or to direct the jury to continue their deliberations."); *Hawaii v. Keaulana*, 71 Haw. 81, 784 P.2d 328 (1989) (no abuse of discretion found where juror number six reveals dissent from verdict, trial court polls rest of jurors and then orders jury to continue deliberations); *Glass v. Kentucky*, 769 S.W.2d 764 (Ky.Ct.App.1989) (no abuse of discretion in accepting jury's verdict where juror's initial ambiguous expression of doubt was cured by subsequent unequivocal answer to trial court, and consent was not product of coercion by trial court); *South Carolina v. Roper*, 274 S.C. 14, 260 S.E.2d 705 (1979) (no abuse of discretion to accept guilty verdict where juror eventually unequivocally assented to guilty verdict).

Finally, some courts have adopted a totality of the circumstances test. *Arizona v. McCrimmon*, 187 Ariz. 169, 927 P.2d 1298 (1996) (under totality of the circumstances test, trial court abused its discretion by denying the motion for a mistrial when juror was singled out as lone dissenter and had ex parte discussion with trial court where trial court told juror that an undecided verdict was unacceptable); *Arizona v. McCutcheon*, 150 Ariz. 317, 723 P.2d 666 (1986) (jury was coerced, under the totality of the circumstances test, when trial judge knew the numerical division of the jury and the form of the trial judge's questions expressed a definite desire for conviction). *See also Brutton v. Florida*, 632 So.2d 1080 (Fla.Dist.Ct.App. 1994) (without expressly adopting a totality of the circumstances test, court reviews the entire circumstances and determines that the juror was coerced by trial court's undue

pressure); *West Virginia v. Tennant*, 173 W.Va. 627, 319 S.E.2d 395 (1984) (court does not expressly adopt totality of the circumstances test, but finds reversible error when trial court repeatedly inquired whether the guilty verdict was the juror's verdict; the trial court coerced the juror, particularly in light of the lengthy deliberations).

■■■ The courts that have adopted the totality of the circumstances test typically make no mention of the standard of review, with two exceptions. Both *McCrimmon* and *United States v. Gambino*, 951 F.2d 498 (2d Cir.1991) apply a totality of the circumstances test and an abuse of discretion standard of review. In *Gambino* the jury returned with a unanimous verdict and defense counsel requested that the jury be polled. Upon polling, it was revealed that both juror number two and juror number seven disagreed with the verdict. The trial court denied counsels' motions for mistrial and directed the jury, with cautionary instructions, to continue deliberating. The jury returned after two hours with a unanimous verdict. The Second Circuit Court of Appeals found that the trial court acted within its discretion when it instructed the jury to continue deliberating. *Gambino*, 951 F.2d at 502. The *Gambino* court considered, as factors which persuaded it that there was no abuse of discretion: (1) that counsel failed to raise objections to the polling procedures; (2) that the trial judge gave a cautionary instruction before ordering the jury to continue deliberations; and (3) that the jury deliberated for another two hours. *Gambino*, 951 F.2d at 501–02.

We are persuaded that the approach taken by *Gambino* uses logical reasoning and is based on sound authority. According to *Gambino*, whether the jury was coerced must be evaluated in light of the facts and circumstances of each case. The per se rule, found in *Spitz*, must be rejected as too rigid and inflexible. It also conflicts with both Federal Rule of Criminal Procedure 31(d) and Idaho Criminal Rule 31(d),[5] which give

---

**5.** Federal Rule of Criminal Procedure 31(d) reads:

Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at

the request of any party or upon the court's own motion. If upon the poll there is not a unanimous concurrence, the jury may be di-

the trial court discretion, allowing it to discharge the jury or direct the jury to continue deliberating. Therefore, for our review, we apply a totality of the circumstances test, conducting an independent analysis based on the facts of Lee's case to determine if the actions of the district court constituted an abuse of discretion.

 When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The motion for mistrial was made urgently, caused by the juror's response that she had a problem with the verdict. In ruling on the motion for mistrial, the district court responded that the correct procedure, at that time, would be to have the jury deliberate further. The appropriate question for our review is, under the circumstances presented in this case, was it reasonable for the district court to conclude that Juror 9 would not be coerced into changing her verdict to guilty upon returning for further deliberation.

Most important, we must recognize that Juror 9 was identified as the lone dissenting juror. The district court continued to poll the jury after Juror 9 expressed her reservations, which revealed the numerical division as eleven to one. Then the district court, over the state's objection, invited counsel to question the juror. After this dialogue was complete, the district court questioned the juror. These facts must be viewed as placing some pressure on Juror 9 at the time.

 This is not the only factor we must consider, however, in determining whether the district court's procedure was coercive. The factors from *Gambino* also provide us guidance. The first factor is the absence of an objection to further polling. The absence of an objection demonstrates "to some degree the absence of a coercive atmosphere." *Gambino,* 951 F.2d at 501–02, *quoting Fiorilla,* 850 F.2d at 176. As noted in Lee's case, defense counsel did not object to the polling process. Once the polling was concluded, defense counsel questioned Juror 9 concerning her problem with the verdict. Lee not only failed to object to the proceeding, but took an active role in questioning Juror 9.

The second factor is whether the trial court gave a cautionary instruction before excusing the jury for further deliberations. *Gambino,* 951 F.2d at 502, *citing Fiorilla,* 850 F.2d at 177 (possibility of coercion is significantly lessened when trial judge gives a cautionary instruction asking the jurors to carefully weigh and consider the positions of the other jurors). A cautionary instruction however, if not carefully phrased, may imply to the jury that the judge is in disagreement and wishes the jury to return a unanimous verdict. In this case, the district court did not give a cautionary instruction per se, but, rather, informed the jury that they may need more time to deliberate, considering the complexity of the case. The district court's direction in this case did not place any undue pressure on the jury to come to a unanimous verdict.

The last factor is the time the jury takes to deliberate after being excused. *Gambino,* 951 F.2d at 502. An immediate return may indicate that the will of the dissenter was overcome by the trial court's comments. Here, the jury was excused for the night and returned to deliberate at 9:00 the next morning. The court reconvened at 12:22 p.m. and the jury announced its unanimous guilty verdict. The time the jury spent in further deliberations militates against a finding that the court proceedings coerced Juror 9.

The most troublesome aspect of this case is that Juror 9 was asked to explain her reservation about the verdict. An argument can be made that in this circumstance, where a dissenting juror has been instructed to deliberate further after the juror has ex-

rected to retire for further deliberations or may be discharged.

Idaho Criminal Rule 31(d) utilizes this exact language.

plained his or her view, the juror could take the instruction to mean that the court has implicitly rejected the juror's position. Such a request that a juror explain or justify a dissenting vote should be avoided. In this case, however, as discussed in Section II(B), the questioning that created this situation was done by defense counsel, not by the court. Further, given that the deliberations continued for approximately three more hours after the jury reconvened the following day, it does not appear that Juror 9 in this case misunderstood the court's instruction as an implicit rejection of that juror's views.

Having thoroughly reviewed the record and having considered the totality of the circumstances, we conclude that there has been no showing of undue coercion on Juror 9. Therefore, we further conclude that the district court did not abuse its discretion when selecting its remedy under I.C.R. 31(d) and instructing the jury to continue deliberations in this case. Thus, we hold that the district court did not err when it denied Lee's motion for a mistrial. Lee's judgments of conviction are affirmed.

LANSING, C.J., and SCHWARTZMAN, J., concur.