**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45241**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 27, 2018** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RANA LYNN KLINGNER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction, <u>affirmed</u>; order of restitution, <u>reversed</u>; and <u>case remanded</u>.

Peterson Lawyers; William J. Young, Boise, for appellant. William J. Young argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent. Ted S. Tollefson argued.

_____

HUSKEY, Judge

Rana Lynn Klingner appeals from the district court's judgment of conviction. She argues: (1) the district court erred by denying her motions for mistrial; and (2) the district court abused its discretion by awarding Idaho Counties Risk Management Program, Boise County's insurer, restitution. The judgment of conviction is affirmed, but the order of restitution is reversed and the case remanded.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2014, at the request of Boise County officials, an Idaho State Police detective was assigned to investigate allegations of theft of public monies at the Boise County Clerk's Office. The detective's investigation revealed a serious lack of security measures to protect against theft. To narrow down suspects, among other methods, the detective administered polygraph tests to

1

several individuals. Klingner, the deputy auditor clerk tasked with receiving funds from county departments, initially agreed to take a polygraph test, but canceled the test. Together with other information the detective unearthed during her investigation, the detective identified Klingner as responsible for the missing monies. The county filed a claim for $47,922.33 with its insurer, Idaho Counties Risk Management Program (ICRMP), which paid the claim less the $1,000 deductible.

Klingner was charged with two counts of grand theft. Before trial, counsel discussed the admissibility of the polygraph evidence with the district court. The district court stated it "would probably issue an in limine order that [polygraphs] are not even to be discussed and witnesses are to be cautioned not to even so much as bring it up. But I'll let [counsel] file the appropriate motions. I don't want to do something off the cuff here." The district court later characterized the pretrial discussion as resulting in a stipulation between counsel that the polygraph evidence was inadmissible. The district court stated it intended its previous statement to have the effect of a formal written order.

During Klingner's cross-examination of the detective at trial, Klingner asked the detective if she had looked into anyone's bank accounts, besides Klingner's. The following exchange took place:

A:      No, because we utilized investigative techniques to eliminate the need to.
Q:      One more time. Can you repeat that?
A:      We employed a tool available to us to look at other potential suspects, and we were able to eliminate those people through that tool.
Q:      How did that take place?
A:      It's in the form of polygraphs.

Klingner, without voicing an objection to the mention of the polygraph tests, immediately switched to a different line of questioning and continued the cross-examination.

After Klingner completed the cross-examination, the State took up a motion with the district court out of the presence of the jury, arguing that because Klingner had opened up the issue of polygraph tests, the State was now permitted to "go into considerable detail on those investigative techniques, specifically a polygraph taken and not taken by various individuals." During this discussion, Klingner moved for a mistrial, arguing that the detective's mention of polygraph tests would cause the jury "to assume that others took, passed the polygraph and Ms. Klingner did not," an assumption that called into question whether the jury could render "a fair and impartial verdict." After receiving additional briefing and hearing further argument

2

from the parties, the district court denied the motion for mistrial, concluding the detective's mention of polygraph tests was invited error because Klingner pursued a line of questioning eliciting that response and that Klingner was not deprived of a fair trial. Additionally, to counter any influence the detective's mention of the polygraph tests may have had upon the jury, the district court provided a curative instruction to the jury:

> Testimony was presented in court regarding the use of polygraph examinations utilized as an investigative tool by law enforcement to assist them in the investigation of this case.
> Polygraphs are not accepted in the scientific community as a reliable method of ascertaining the truth and you are not to consider whether or not a polygraph was given or speculate as to what any results might have been.

Before beginning the re-direct examination of the detective, the district court expressed it would allow the State to elicit testimony about the detective's investigative techniques without the use of the term polygraph. Klingner objected to allowing this testimony, which the district court deemed a continuing objection. During the re-direct examination, the detective testified about investigative tools and methods that she used to identify Klingner. After the re-direct examination was finished, Klingner renewed her motion for mistrial stating, "I don't think we're fooling anyone here, quite frankly, by using the terms 'tools' and 'techniques'" as a stand-in for polygraph tests. The district court denied the motion, but took it under advisement.

At the conclusion of trial, the jury found Klingner guilty of both counts of grand theft. Klingner again renewed her motion for mistrial. After a hearing on the motion, the district court denied Klingner's motion for mistrial. The district court held that the detective's mention of polygraph tests was invited error and that the detective's testimony about investigative tools and methods did not entitle Klingner to a mistrial. Further, the district court held that if either constituted error, the error was harmless because this was not a case where the evidence presented at trial was close, because the strong evidence of the defendant's guilt, along with the curative instruction provided by the court, ensured the jury's verdict was fair and impartial.

On the matter of restitution, the State requested the district court order Klingner to pay $46,922.33 to ICRMP. At the restitution hearing, the State presented an affidavit of Mary Prisco, the Boise County Clerk, stating Boise County paid and maintained records for all

3

amounts collected and due to the Idaho Supreme Court.[1]  Klingner did not object to the affidavit. The State also presented a spreadsheet listing the losses incurred by Boise County.  Klingner did not object to the admission of the spreadsheet, although she contended the sum of $46,922.33 was incorrect.  The State agreed the sum was incorrect and modified its request to $36,376.37. The State presented no additional evidence or testimony.  The district court found the $36,376.37 sum "accurately reflects the total amount of cash, the total amount indicated on money orders, and the amount written on the checks or money orders taken by Ms. Klingner" and ordered Klingner to pay the sum to ICRMP.

After consolidating the two counts of grand theft, the district court entered judgment, sentenced Klingner to a unified term of five years, with two years determinate, suspended the sentence, and placed Klingner on probation.  Klingner appealed to this Court.

## II.

## ANALYSIS

Klingner first argues the district court erred by denying her motions for mistrial. Specifically, Klingner argues she did not receive a fair and impartial trial because the jury was improperly influenced by the detective's statement that polygraphs were used to narrow the suspect pool.  She argues that the detective's use of the phrase investigative tools and methods in her testimony was used as a synonym for the word polygraph and thus, unduly influenced the jury in the same fashion.  Second, Klingner argues the district court abused its discretion by awarding ICRMP restitution.  She contends the State failed to prove an actual loss of $36,376.37 or that ICRMP is a victim under the restitution statute.  Additionally, Klingner contends awarding restitution to Boise County amounts to unjust enrichment.

Preliminarily, we note that the parties dispute whether this Court should review the district court's decisions about the detective's testimony for reversible error or for an abuse of discretion.  We conclude the detective's mention of the word polygraph and later the phrase investigative tools and methods, were two separate incidents that triggered two independent motions for mistrial.  Therefore, rather than reviewing either for an abuse of discretion, as a

---

[1]  During trial, testimony was offered about iSTARS, the computer program which Boise County court used to record court fines, fees, and other payments.  The iSTARS program's use was mandated by the Idaho Supreme Court.

4

simple evidentiary ruling would be, we review the district court's denial of those mistrial motions, including the post-trial renewal of those two motions, for reversible error.

**A.      The District Court Did Not Err by Denying Klingner's Motions for Mistrial**

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1.  A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial.  I.C.R. 29.1(a).  Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer.  The standard, more accurately stated, is one of reversible error.  Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion.  The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

Error is not reversible unless it is prejudicial.  *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983).  With limited exceptions, even constitutional error is not necessarily prejudicial error.  *Id.*  Thus, we examine whether the alleged error complained of in the present case was harmless.  *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005).  Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict.  *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010).

The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error.  *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993).  One may not complain of errors one has consented to or acquiesced in.  *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct. App. 1998).  In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996).  This doctrine applies to

sentencing decisions as well as rulings made during trial. *State v. Griffith*, 110 Idaho 613, 614, 716 P.2d 1385, 1386 (Ct. App. 1986).

1.    **The detective's testimony about the polygraph tests is the result of invited error**

We first examine whether Klingner's line of questioning, resulting in the detective's comment about the polygraph tests, constitutes invited error. The district court and the parties have tied their analysis of this issue to *Atkinson*. In that case, the district court instructed a witness that he could not testify about an individual being thrown from a train. *Atkinson*, 124 Idaho at 818, 864 P.2d at 656. However, in response to a question by defense counsel, the witness mentioned the individual being thrown from the train. *Id.* Defense counsel moved for a mistrial, but the district court denied the motion. *Id.* On appeal, after examining defense counsel's line of questioning and the witness's responses, this Court concluded the witness's response was "an accurate, fair and responsive answer to defense counsel's question." *Id.* at 821, 864 P.2d at 659. Continuing, the Court elaborated: "[a] misstep on dangerous ground, where counsel has voluntarily ventured but is unsure of possible responses, may result in invited error, and if so, cannot then be grounds for a mistrial." *Id.*

The record shows that Klingner knew the detective had employed polygraph tests as one of her investigative techniques; Klingner herself raised the issue before trial. Yet, even after the detective provided a generalized answer about an investigative technique, Klingner pushed the detective further: "One more time. Can you repeat that?" The detective rephrased her generality, stating she "employed *a* tool available to us to look at other potential suspects, and we were able to eliminate those people through that tool." (Emphasis added.) Klingner knew or should have known that the specific tool the detective was referencing was the polygraph. Trial counsel should have known that any questions inquiring about that specific tool were going to lead to the detective talking about polygraphs. Nonetheless, Klingner pressed the detective for specificity about the tool used by asking, "How did that take place?" which led to the detective's mention of the polygraph tests.

Here, after examining Klingner's line of questioning of the detective, as well as the detective's responses, the detective's answer, "It's in the form of polygraphs," was an accurate, fair, and responsive answer to defense counsel's question. That Klingner argues she did not know the detective would respond by discussing the polygraph tests is no defense--the line of questioning shows Klingner was voluntarily stepping on ground she knew was dangerous,

6

walking the fine line set by the district court in its pretrial ruling about the discussion of polygraph evidence. Thus, we affirm the district court's holding that the detective's testimony about the polygraph tests amounted to invited error. Because invited error is not reversible, the district court did not err in denying Klingner's motions for mistrial on this ground.

**2.    The detective's testimony about investigative tools and methods does not amount to reversible error**

Klingner also argues that the detective's testimony about investigative tools and methods, to which she objected, was so egregious as to merit a mistrial. However, the State has shown that any error resulting from this testimony did not, beyond a reasonable doubt, contribute to the jury's verdict. First, the colloquy between the State and the detective reveals that investigative tools and methods was not used as a synonym for the word polygraph. Many of the questions and answers using that phrase encompass investigative tools, methods, and techniques other than polygraph tests. Second, to the extent the jury interpreted that phrase to be code for polygraph tests, it was instructed by the district court "not to consider whether or not a polygraph was given or speculate as to what any results might have been." Klingner provides no evidence that the jury disregarded this instruction. *See State v. Grantham*, 146 Idaho 490, 498, 198 P.3d 128, 136 (Ct. App. 2008) ("It is ordinarily presumed that the jury obeyed the court's instruction entirely. We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." (citation omitted)). Third, as stated by the district court, other compelling evidence of Klingner's guilt was presented at trial such that this was not a close case. Together, these considerations show the jury's verdict was not affected by the detective's testimony about investigative tools and methods. Thus, the district court did not commit reversible error by denying Klingner's motions for mistrial on this ground.

**B.    The District Court Abused Its Discretion by Awarding ICRMP Restitution**

Idaho Code Section 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Thus, we

7

will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

To meet the second and third requirements of this analysis, the trial court must base the amount of restitution upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6); *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010). Thus, the State must prove, by a preponderance of the evidence, a causal relationship between the defendant's criminal conduct and the damages suffered by the victim. I.C. § 19-5304(6); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *State v. Hill*, 154 Idaho 206, 212, 296 P.3d 412, 418 (Ct. App. 2012).

The determination of the amount of restitution, which includes the issue of causation, is a question of fact for the trial court. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997). The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lombard*, 149 Idaho at 822, 242 P.3d at 192. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013).

Klingner argues the State did not meet its burden of proving the restitution amount by substantial evidence and that ICRMP is a victim under I.C. § 19-5304(1)(e) by a preponderance of evidence. During the restitution hearing, the State submitted two pieces of evidence to the district court: (1) the affidavit of Mary Prisco; and (2) the spreadsheet listing the losses incurred by Boise County. The district court mentioned it had reviewed all the trial exhibits and specifically referenced a trial exhibit that totaled Boise County's losses at $46,922.33.

In order for a third-party victim, like ICRMP, to have a causal relationship with a defendant's conduct, it must meet the definition of "victim" provided in I.C. § 19-5304(1)(e): "[A] person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly injured victim pursuant to a contract including, but not

8

limited to, an insurance contract." *See State v. Cheeney*, 144 Idaho 294, 160 P.3d 451 (Ct. App. 2007) (vacating an order of restitution to an insurance company where the State failed to present evidence of a contractual relationship with the primary victim). At the restitution hearing, the State provided no evidence to the district court that ICRMP made payments to Boise County pursuant to an insurance contract. Neither the affidavit nor the spreadsheet contained any evidence of an insurance contract, nor did the State call any witnesses to testify to the existence of a contract. However, at trial, Mary Prisco testified concerning the county's relationship with ICRMP:

> Q: In your capacity as financial officer of the county and after the determination was made that there was a loss, did you report that loss to [ICRMP], the County's insurance carrier?
> A: I did.
> Q: And how much was that?
> A: The claim was for $47,922.
> Q: And did they accept that claim and pay that claim?
> A: They did pay that claim less our $1,000 deductible. So it was $46,922 that came back to the county.

Although this evidence was submitted at trial, the State did not reference a contract or a proof of claim payment from ICRMP at the restitution hearing--nor does it appear the record contains such. As a result, we cannot determine on what evidence the district court based its conclusion that ICRMP was a victim under I.C. § 19-5304(1)(e) or whether that decision was based on substantial evidence. Thus, we cannot conclude the district court properly exercised its discretion.

Even if the State had provided evidence that ICRMP was a victim as defined by I.C. § 19-5304(1)(e), the district court abused its discretion in awarding $36,376.37 to ICRMP. Of the two pieces of evidence submitted at the restitution hearing, only the spreadsheet has potential bearing on the accuracy of the $36,376.37 sum. The spreadsheet does not indicate its author, the office from which it originated, how it was prepared, or if it is a sworn statement. Moreover, the State called no witnesses to testify about the spreadsheet. Prisco's affidavit contains no information about the amount of damages sustained. The Idaho Supreme Court has recently held that unsworn representations provided to the district court outside the context of I.C. § 37-2732(k) may constitute substantial evidence. *State v. Wisdom*, 161 Idaho 916, 923, 393 P.3d 576, 583 (2017). However, an inspection of the spreadsheet reveals neither the $36,376.37 nor $46,922.33 as the sum the State requested. Moreover, even when all of the individual figures on

the three-page spreadsheet are totaled, they do not equal either of those figures.  This piece of evidence, even when considered together with the trial exhibit the district court considered, did not provide the district court with sufficient basis to support the amount awarded.  As a result, we are unable to determine from the record, the amount, if any, of damages that should be awarded in restitution.[2]  Therefore, we reverse the district court's order of restitution and remand for proceedings consistent with this opinion.  *See State v. Cunningham*, 161 Idaho 698, 702, 390 P.3d 424, 428 (2017) (vacating restitution award, yet remanding for further proceedings); *State v. Nelson*, 161 Idaho 692, 697, 390 P.3d 418, 423 (2017) (vacating restitution award, yet refusing to remand for further proceedings for the second time).

### III.

### CONCLUSION

The district court did not commit reversible error by denying Klingner's motions for mistrial.  However, the district court abused its discretion by awarding ICRMP $36,376.37 in restitution.  The district court's judgment of conviction is affirmed, but its order of restitution is reversed, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

---

[2]     Having determined that the district court abused its discretion in awarding ICRMP $36,376.37 restitution, we need not address Klingner's unjust enrichment argument.