**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37834**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 60** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: October 17, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| CHRISTOPHER A. PENTICO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Kevin Swain, Magistrate.

Order of the district court, on appeal from the magistrate, affirming order withholding judgment for trespass, <u>affirmed</u>.

Gordon Law Offices, Boise, for appellant. Heidi M. Tolman and Bruce S. Bistline argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

MELANSON, Judge

Christopher A. Pentico appeals from the district court's intermediate appellate decision affirming the magistrate's order withholding judgment for trespass. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Beginning in 2007, the Idaho Capitol closed to the public for renovation and the Governor's office was temporarily moved to the third floor of the nearby Borah Building. On March 25, 2008, an officer stopped Pentico on state property, in the vicinity of the Capitol Annex, and informed Pentico that he was no longer authorized to be at the Capitol Annex, the

1

third and fourth floors of the Borah Building, and the department of education.[1]  On April 2, 2008, Pentico visited the Governor's office on the third floor of the Borah Building.  After Pentico left the Borah Building, he was cited for trespass in violation of I.C. § 18-7011.[2]  Months later, the state filed an amended complaint charging Pentico with trespass in violation of I.C. § 18-7008.  Pentico filed a motion to dismiss the amended complaint and a motion in limine.

At the hearing on Pentico's motion to dismiss, Pentico argued the amended complaint should be dismissed because it did not recite all of the elements of trespass required by I.C. § 18-7008(A)(8) because it alleged only that, on April 2, Pentico willfully trespassed upon the property of the State of Idaho by entering the Governor's office in the Borah Building.  The state then moved to file a second amended complaint which provided that, on April 2, Pentico willfully trespassed upon the property of the State of Idaho by returning and entering the Governor's office in the Borah Building without permission or invitation, after being verbally notified within the previous year not to do so, by an authorized agent of the State.  The magistrate granted the state's motion to amend and denied Pentico's motion to dismiss on that ground.

In further support of his motion to dismiss, however, Pentico cited to a recent Idaho Supreme Court decision for the proposition that I.C. § 18-7008(A)(8) could be challenged as being unconstitutional as applied to a person on public property who is exercising his or her free speech rights. *See State v. Korsen,* 138 Idaho 706, 715-16, 69 P.3d 126, 135-36 (2003).  After hearing argument on the constitutional issue, the magistrate denied Pentico's motion to dismiss, holding that I.C. § 18-7008(A)(8) placed reasonable restrictions on the time, place, and manner

---

[1]  The record is somewhat sparse as to the reason for Pentico's exclusion from those properties.  This is so, in part, because the magistrate granted Pentico's motion in limine, prohibiting references to other crimes, wrongs, or acts of Pentico.  We note, too, that such evidence was ruled irrelevant by the magistrate because of a determination that I.C. § 18-7008(A)(8) was not unconstitutional as applied.  On a portion of a video recording, the officer referred (outside of Pentico's presence) to Pentico as having been "harassing people at the Governor's office."  This part of the recording was disregarded by the magistrate at Pentico's request.  At sentencing, there were references to Pentico having been involved in causing a disturbance at the department of education and that he had recently become persistent in contacting members of the Governor's staff regarding his issue with the department of education.

[2]  Idaho Code Section 18-7011 deals with property enclosed by fences or posted with no trespassing signs.

in which constitutional rights could be exercised and Pentico was being prosecuted for his conduct and not the content of his communication. Following this determination, the magistrate addressed and granted Pentico's motion in limine which sought to limit any testimony regarding other crimes, wrongs, or acts of Pentico. Based on the foregoing, the magistrate determined that the content of the communication and prior dealings Pentico may have had with other government officials was not relevant to the case and limited testimony to what occurred on April 2 when Pentico was cited for trespass.[3]

The parties waived trial by a jury. At trial before the magistrate, in accordance with its previous ruling, Pentico was not allowed to present testimony regarding his communication and prior dealings with government officials or assert that his actions were justified under the First Amendment. At the conclusion of trial, the magistrate determined that the state proved all of the elements required by I.C. § 18-7008(A)(8) beyond a reasonable doubt--that Pentico was properly notified he could not be present at certain locations and that he was thereafter physically present at those locations within a year of such notice. The magistrate found Pentico guilty of trespass, entered a withheld judgment, and placed Pentico on probation for thirty days. Pentico appealed.

On appeal to the district court, Pentico argued that the state did not prove all of the elements of trespass required by the statute. Specifically, Pentico alleged that the state failed to prove that Pentico had not been invited to return to the Borah Building and also failed to prove that he had been asked specifically to leave the Borah Building. Pentico also argued that the statute was unconstitutional as applied to him. The district court concluded that the state proved all of the elements of trespass required by the statute. As to the constitutional challenges, the district court determined that the only issue preserved for appeal was whether Pentico engaged in constitutionally-protected activity on April 2 because Pentico did not argue before the magistrate that he was engaged in constitutionally-protected conduct that was infringed by the notice banning him from government property on March 25. The district court concluded that the statute was not unconstitutional as applied to Pentico on April 2 and affirmed the magistrate's order withholding judgment. Pentico again appeals, arguing that the state failed to prove all of

---

[3] At trial, the magistrate clarified that testimony regarding whether Pentico was given notice on March 25 that he could not be present at specified state properties would also be allowed.

3

the elements of trespass required by I.C. § 18-7008(A)(8), that the statute was unconstitutional as applied to him, and that that the magistrate erred by precluding evidence.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

### A.    Statutory Interpretation

Pentico argues that he could not be convicted of trespass because the state did not prove all of the elements required by the statute. Idaho Code Section 18-7008(A) provides that every person is guilty of a misdemeanor who willfully commits any trespass by:

> (8) . . . being first notified in writing, or verbally by the owner or authorized agent of the owner of real property, to immediately depart from the same and who refuses to so depart, or who, without permission or invitation, returns and enters said property within a year, after being so notified . . . .

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent

4

upon a court to give a statute an interpretation which will not render it a nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Pentico first argues that the statute required the state to prove that he was not permitted or invited to return to the third floor of the Borah Building. Alternatively, Pentico argues that, even if such permission or invitation was not an element required by the statute, it was an affirmative defense and the magistrate erred by precluding him from presenting testimony about the alleged invitation. At the pretrial hearing, Pentico asserted that, by way of an offer of proof, on March 11, 2008, he asked the Governor for a meeting and the Governor responded that a meeting might be possible after the legislative session was over. It is not necessary to decide here whether permission or invitation was an element of the statute or a matter to be raised as an affirmative defense. Even if what the Governor allegedly said on March 11 could somehow be construed as permission or an invitation, such permission or invitation became irrelevant on March 25 when the officer notified Pentico that he was no longer authorized to be at the third floor of the Borah Building and thereby superseded any alleged permission or invitation by the Governor. Further, Pentico prevented presentation of evidence regarding communication and prior dealings he had with government officials when he filed, and the court granted, his motion in limine which sought to limit any testimony regarding Pentico's other crimes, wrongs, or acts. Therefore, the magistrate did not err by concluding that the state was not required to prove lack of permission or invitation as an element of trespass under these circumstances or by precluding evidence of Pentico's alleged permission or invitation.

Pentico also argues that, because public property was involved, the statute required the state to show a reason for excluding Pentico from the Capitol Annex, the third and fourth floors of the Borah Building, and the department of education. However, the statute does not distinguish between public and private property and does not require the owner or authorized agent of the owner of real property to identify (or even have) a reason to ask a person to leave. Further, while Pentico asserts that only an inappropriately-behaved citizen who has no legitimate business at a public office can be asked to leave and then be arrested for refusing to do so, Idaho courts have construed the statute to not require that public *or* private property owners provide a reason for asking a person to leave their land. *Korsen*, 138 Idaho at 716, 69 P.3d at 136; *State v.*

5

*Missamore*, 119 Idaho 27, 31, 803 P.2d 528, 532 (1990); *State v. Bowman*, 124 Idaho 936, 945, 866 P.2d 193, 202 (Ct. App. 1993). Therefore, the magistrate did not err by concluding that Pentico had been properly asked to leave state property without an identified reason.[4]

Pentico finally asserts that the plain language of the statute requires that the person being properly notified to leave property must be physically present on such property at the time of the notice and then return to the same property within a year. Pentico argues that, because he was physically present at the Captiol Annex when he was told he was no longer authorized to be at other state properties, he could only be cited for trespass if he returned to the Capitol Annex. This construction of the statute would lead to an absurd result. If a real property owner or authorized agent notifies an individual that he or she is no longer authorized to be on specifically-identified properties owned by that owner, the owner or agent is not required to physically catch and notify the individual on each identified property to gain protection under the statute. Therefore, the magistrate did not err when it determined Pentico could be convicted based upon his entry onto the third floor of the Borah Building.

Accordingly, we agree with the magistrate that the statute required the state to prove two elements under the circumstances of this case--that Pentico was properly notified that he could not be present at certain locations and that he was thereafter physically present at those locations within a year of such notice. Having found that the state proved these two elements beyond a reasonable doubt, the magistrate did not err by concluding that Pentico was guilty of trespass under I.C. § 18-7008(A)(8).

## B.  Constitutional Challenges

Pentico argues that I.C. § 18-7008(A)(8) violated his due process rights because it was unconstitutionally overbroad and vague as applied to him on March 25 when he was asked to leave the Captiol Annex and on April 2 when he was charged with trespass after visiting the Governor's office. Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.* Further, issues not raised below

---

[4]  We note here, as did the magistrate at sentencing, that our function is not to make law. If it would be sound policy to require the state to identify a specific reason for excluding someone from state property, then it is a matter for the legislature to consider.

generally may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Therefore, the threshold inquiry is whether Pentico raised his constitutional challenges before the magistrate to preserve them for appeal.

### 1. Challenges preserved for appeal

At the pretrial motion hearing, Pentico cited *Korsen*, 138 Idaho at 715-16, 69 P.3d at 135-36, for the proposition that I.C. § 18-7008(A)(8) could be challenged as being unconstitutional as applied to a person on public property who is exercising his or her free speech rights. The state argued that, while Pentico had a right to drop off a letter at the Governor's office on April 2, he was cited for trespass for his *conduct* of going to that office after he had been notified he was not allowed to do so and not for the content of any communication. In response, Pentico argued that "to whittle away a citizen's right to grieve government actions or to free speech by saying the methods and manner in which they can do this is somewhat chilling." Pentico then asserted that any statute that attempted to restrict public access to public areas must be strictly construed. Finally, Pentico argued that there was no basis to justify imposition of the statute, and he described the grievances contained in the letter he delivered to the Governor's office on April 2. After hearing this argument on the constitutional issue, the magistrate denied Pentico's motion to dismiss, holding that I.C. § 18-7008(A)(8) placed reasonable restrictions on the time, place, and manner in which constitutional rights could be exercised and that Pentico was being prosecuted for his conduct and not the content of his communication. In his closing argument at trial, Pentico argued that, "to trespass in the first place, there has to be some reason, . . . otherwise a police officer can tell any of our citizens don't go to numerous public buildings, and if they go, they're subject to criminal trespass."

As such, while Pentico asserted before the magistrate that by delivering a letter to the Governor's office he was engaged in constitutionally-protected conduct on April 2 and the statute infringed upon that right, he did not allege that he was engaged in any constitutionally-protected conduct that the statute infringed upon on March 25. As stated above, *Korsen* indicates that I.C. § 18-7008(A)(8) may be challenged as being unconstitutional as applied to a person on public property *who is exercising* his or her free speech rights. *Korsen,* 138 Idaho at 715-16, 69 P.3d at 135-36. As just described, however, Pentico did not allege he was engaged in any constitutionally-protected conduct on March 25. Further, the record is devoid of any evidence that would lead to such a conclusion. Therefore, the only challenge

preserved for appeal is whether the statute was unconstitutional as applied to Pentico on April 2 when he delivered a letter to the Governor's office.

Pentico argues that, even if he did not preserve his challenge to the constitutionality of the statute as applied to him on March 25, this Court should review it based on fundamental error. Idaho decisional law has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Recently, the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). The Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id.* at 221, 245 P.3d at 978.

Assuming *Perry* applies in these circumstances and, as Pentico asserts, an unwaived constitutional right was violated on March 25, Pentico fails under the second prong of *Perry* because it is not clear or obvious from the record that an error was made at trial that violated Pentico's constitutional right without the need for reference to any additional information not contained in the appellate record. Pentico was given ample opportunity to present all of his constitutional arguments to the magistrate before the magistrate limited trial testimony to the events of April 2. Further, by filing a motion in limine to limit any testimony regarding other crimes, wrongs or acts of Pentico, Pentico himself prevented evidence from coming in regarding the events that led up to his being asked to leave the Capitol Annex on March 25. Accordingly, we decline to review Pentico's due process challenge to the statute as it was applied to him on March 25 on the basis of fundamental error.

Pentico also argues that we should review the statute as it was applied to him on March 25 when he was asked to leave the Capitol Annex, even though not preserved, because he received ineffective assistance of counsel. Ordinarily we do not address claims of ineffective assistance of counsel on direct appeal because the record is rarely adequate for review of such claims. *Sparks v. State*, 140 Idaho 292, 296, 92 P.3d 542, 546 (Ct. App. 2004); *State v. Hayes*,

8

138 Idaho 761, 766, 69 P.3d 181, 186 (Ct. App. 2003). They are more appropriately presented through post-conviction relief proceedings where an evidentiary record can be developed. *State v. Mitchell*, 124 Idaho 374, 376, 859 P.2d 972, 974 (Ct. App. 1993). However, even if addressed, to prevail on an ineffective assistance of counsel claim, Pentico must show that the attorney's performance was deficient, and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). We evaluate an attorney's performance at the time of the alleged error, not in hindsight, and presume that trial counsel was competent and that trial tactics were based on sound legal strategy. *State v. Porter*, 130 Idaho 772, 791-92, 948 P.2d 127, 146-47 (1997).

Pentico asserts that his trial counsel was ineffective because he failed to adequately raise Pentico's constitutional challenge to the statute as it applied to him on March 25. When Pentico's trial counsel filed a motion in limine to limit any testimony regarding other crimes, wrongs or acts of Pentico, he thereby prevented evidence from coming in regarding the events that led up to his being asked to leave the Capitol Annex on March 25. Filing this motion may have been a tactical or strategic decision of trial counsel, but there is no evidence in the record. Similarly, there is no evidence in the record, and Pentico does not assert, that his counsel's decision was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. The record is not adequate to allow us to review Pentico's claim of ineffective assistance of counsel, and we decline to do so.

### 2. Challenge to the statute as applied to Pentico on April 2

As discussed above, Pentico preserved his constitutional challenge to I.C. § 18-7008(A)(8) as applied to him on April 2 when he was cited for trespass. Accordingly, we will next address this challenge. If a statute is challenged by a defendant as being overbroad as applied, the first issue to be decided is whether the statute regulates constitutionally-protected

9

conduct. *Korsen*, 138 Idaho at 713, 69 P.3d at 133; *State v. Bitt*, 118 Idaho 584, 589, 798 P.2d 43, 48 (1990). If so, the next issue to be decided is whether the statute precludes such constitutionally-protected conduct. *State v. Poe*, 139 Idaho 885, 892-93, 88 P.3d 704, 711-12 (2004). In *Korsen*, the Idaho Supreme Court concluded that Idaho's trespass statute is not aimed at regulating speech or communication in any form. *Korsen,* 138 Idaho at 715, 69 P.3d at 135. Further, the as-applied analysis requires an examination of the statute as it applied to Pentico's particular conduct on April 2 and the facts of this case do not provide a situation where the exercise of free speech was impinged. On April 2, Pentico went to the Governor's office on the third floor of the Borah Building to deliver a letter. After Pentico delivered the letter, the purpose of his visit to the Governor's office came to an end. After leaving the Borah Building, Pentico was cited with trespass for his conduct of visiting the third floor of the Borah Building in violation of the notice banning him from that building, not for the content of any communication.[5] Additionally, physical presence, even in a public building dedicated to public uses for the purpose of communicating ideas, is not "pure speech" and may not be protected by the First Amendment. *Korsen*, 138 Idaho at 715, 69 P.3d at 135. Accordingly, because the statute, as applied, did not regulate constitutionally-protected conduct and Pentico was cited for trespass because of his conduct of visiting a public building on April 2 in violation of the notice banning him from that building and not the content of any communication, the statute was not unconstitutionally overbroad as applied to Pentico on April 2.

Pentico also argues that the statute was unconstitutionally vague as applied to him on April 2. To prevail on such a challenge, a defendant must show that the statute, as applied to the defendant's conduct, failed to provide fair notice that the defendant's conduct was proscribed or failed to provide sufficient guidelines such that the police had unbridled discretion in determining whether to arrest the defendant. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. However, because Pentico did not assert before the magistrate that he was not given fair notice that his return to the third floor of the Borah Building was prohibited or that the officer had unbridled discretion in determining whether to arrest Pentico, he did not preserve this issue for appeal. Therefore, we need not review Pentico's challenge that the statute was unconstitutionally vague as applied to him on April 2. However, even if the issue had been

---

[5]     The letter apparently dealt, at least in part, with Pentico having been excluded from state property. After he was cited, Pentico delivered a similar letter to the attorney general's office.

preserved for appeal, the statute indicated that, if a person is told to leave property by the owner or authorized agent and that person comes back to the same property within a year without permission or invitation, he or she will be guilty of trespass. The statute provided fair notice to Pentico that, after he was properly notified that he was not authorized to be at specified state properties, his return to such properties without permission or invitation within a year would constitute trespass. As to Pentico's claim that the police had unbridled discretion in determining whether to cite Pentico for trespass, this argument is without merit because the statute indicated that a person could only be cited for trespass for failure to leave or upon return to property within a year after receiving proper notice to depart.

## C.     Preclusion of Evidence

Finally, Pentico argues that, while he did what he could to raise all of his as-applied constitutional challenges, he was prevented from adequately doing so because the magistrate limited testimony to the events of April 2 and erroneously precluded Pentico from presenting evidence regarding the events that led up to his being asked to leave the Capitol Annex on March 25. In order to preserve an evidentiary ruling for appellate review, the party assigning error to the ruling must make a sufficient record from which an appellate court can adequately determine whether there was error, and also whether the rights of such party have been prejudiced. *State v. Schoonover*, 125 Idaho 953, 954, 877 P.2d 924, 925 (Ct. App. 1994). Without any record of the nature of the evidence that was excluded, we cannot determine whether its exclusion, even if erroneous, was harmless or was prejudicial to Pentico's case. *See id.* at 955, 877 P.2d at 926. As discussed above, it was only *after* hearing argument on the constitutional issue that the magistrate limited the focus of Pentico's trial to the events of April 2. As such, the magistrate did not prevent Pentico from raising all of his constitutional challenges to the statute by presenting evidence regarding the events that led up to his being asked to leave the Capitol Annex on March 25. Pentico did not raise the challenge and present evidence to the magistrate when given the opportunity to do so. Further, even after the magistrate's ruling limiting testimony to the events of April 2, Pentico still had the burden to preserve a record of his challenge for appellate review. Pentico did not make a sufficient record from which we can determine whether there was error.

Additionally, the doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho

816, 819, 864 P.2d 654, 657 (Ct. App. 1993). One may not complain of errors one has consented to or acquiesced in. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct. App. 1998). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996). This doctrine applies to sentencing decisions as well as rulings made during trial. *State v. Griffith*, 110 Idaho 613, 614, 716 P.2d 1385, 1386 (Ct. App. 1986). As such, by filing a motion in limine which sought to limit any testimony regarding other crimes, wrongs or acts of Pentico, Pentico himself prevented evidence from coming in regarding the events that led up to his being asked to leave the Capitol Annex on March 25. Therefore, even assuming it was error for the magistrate to preclude Pentico from presenting evidence regarding the events that led up to his being asked to leave the Capitol Annex on March 25, such error is not reversible.

## III.

## CONCLUSION

The magistrate did not err when it found Pentico guilty of trespass under I.C. § 18-7008(A)(8). There was substantial evidence to support the finding of guilt. To the extent that challenges were preserved for appeal, the statute was not unconstitutional as applied to Pentico and the magistrate did not err by precluding evidence. Therefore, the district court's intermediate appellate decision upholding the magistrate's order withholding judgment for trespass is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**