**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41094**

| | | |
|---|---|---|
| **BILLY RAYMOND SHEARIN,** | ) | 2014 Unpublished Opinion No. 802 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: November 6, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| **STATE OF IDAHO,** | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment denying post-conviction relief, <u>affirmed</u>.

Billy Raymond Shearin, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Billy Raymond Shearin was convicted of burglary. He contends that he is entitled to post-conviction relief because his attorney failed to file a motion seeking to suppress evidence found in his car and home. He also contends that his attorney should have filed a direct appeal. Finally, he argues he is entitled to relief because the State Appellate Public Defender (SAPD) withdrew from this appeal.

## I.

## BACKGROUND

Shearin was convicted of burglary in violation of Idaho Code § 18-1401. He thereafter filed a petition for post-conviction relief, commencing the proceedings at issue in this appeal. In his amended petition, Shearin raised two claims. First, he alleged that his defense attorney was ineffective for failing to file a suppression motion prior to Shearin's change of plea. He argued that the search of his vehicle violated the Fourth Amendment and that a later search of his home

1

was tainted by the unlawful search of his vehicle. Second, he claimed that his defense attorney was ineffective when she failed to file a notice of appeal.

The post-conviction court held an evidentiary hearing at which Shearin, his defense counsel, and various law enforcement personnel testified. The evidence established that at the time of his arrest Shearin was a parolee. As a condition of his parole, he had signed a consent to searches that said, "Parolee will submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and s/he does waive [the] constitutional right to be free from such searching." As to the search, law enforcement personnel gave most of the testimony. The police received a report that Shearin was suspected of repeatedly stealing high-end athletic clothing from local stores belonging to a retail chain. Employees of the stores from which he was stealing had identified Shearin by appearance, name, and license plate number. They told police that on several prior occasions Shearin entered a fitting room, hid certain items, and then left the store with those hidden items. At the time of the report, store employees had observed Shearin in a store and had seen him enter a fitting room numerous times, carrying several Nike-brand items. The officers and store employees believed that this conduct was suspicious because repeated trips into the fitting areas were unusual, because it is a tactic frequently used to steal, and because the items taken into the fitting areas were the sort of items that are frequently stolen.

Officers observed Shearin leaving the store and followed his car. They did not pull him over immediately, but waited until he violated a traffic law by failing to come to a full stop at a stop sign. When officers stopped the car, they observed a new Nike shirt in the front seat. The law enforcement witnesses testified that people who engage in retail theft frequently steal many items and frequently store stolen items in their cars until they find a means of fencing the items. Given the prior reported thefts, the law enforcement personnel believed additional items would be found in Shearin's trunk. Knowing that Shearin was a parolee, the officers sought and received authorization to search the car from a parole officer who arrived after the search had begun and perhaps shortly after it had been completed. Once police opened the trunk, they found a duffle bag containing brand-name clothing with price tags from the reporting retail

establishment.  Later, police and parole officers searched Shearin's home pursuant to a waiver contained in his parole agreement.[1]

Both Shearin and his trial counsel testified regarding his alleged request for an appeal. Shearin testified that he asked his attorney to file an appeal and a Rule 35 motion after he was sentenced, but before he was removed from the courtroom.  He also testified that he attempted to call trial counsel several times after being taken to the penitentiary, but never got into contact with her.  Conversely, trial counsel testified that Shearin had requested that she file a Rule 35 motion, but that the request was made two months *before* Shearin was sentenced.  Counsel said she then explained the timeline and purpose for filing a Rule 35 motion, but did not file a premature Rule 35 motion at that time.  Counsel testified that she did not recall Shearin requesting an appeal, that she would have made a note on the file and would have filed an appeal if a request had been made, but no appeal had been filed and no note appeared on the file.  She further testified that she had no recollection of any communication from Shearin after he was taken to the penitentiary, and that she would have expected there to be a note on the file if there had been any communication.

After the hearing, the district court concluded that the stop of Shearin's vehicle was lawful and that the search of the vehicle, and in particular the trunk, was permitted under two rationales.  First, the court concluded that because the police officers acted as agents of the parole officers, the search fell within the scope of Shearin's Fourth Amendment waiver.  In the alternative, it held that the automobile exception to the warrant requirement applied because officers had probable cause to believe that Shearin had committed a theft offense and that evidence of the offense would be found in the vehicle.  Finally, it held that the search of the home fell within the scope of Shearin's waiver.

As to defense counsel's failure to file a notice of appeal, the district court concluded that the dispute required only a credibility determination.  The court said:

> The parties concede that if an equivocal inquiry concerning an appeal were made, but not clarified to the point of certainty, it would not be ineffective assistance for counsel to neglect to pursue the issue further or to file an appeal upon her best guess concerning her client's wishes.

---

[1]     Because the search of the home was not directly challenged, the details of this later search are immaterial to the disposition of this appeal.

Based upon this concession and upon a finding that trial counsel was more credible than Shearin, the district court concluded that Shearin failed to show ineffective assistance of counsel.

Shearin appeals and asserts that the district court erred by holding that the search of his vehicle fell within the scope of his waiver, that the court applied an incorrect standard regarding counsel's failure to file an appeal, and that the SAPD was ineffective for withdrawing in this case.

## II.

## ANALYSIS

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). Where

4

the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court is generally determinative of both prongs of the *Strickland* test. *Boman*, 129 Idaho at 526, 927 P.2d at 916.

## A.    Shearin Did Not Show Ineffective Assistance With Regard to the Search

The Fourth Amendment prohibits unreasonable searches and seizures. A warrantless search is presumptively unreasonable unless it falls within certain well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). No warrant is required if a defendant consents to a search. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). A probationer or parolee may consent to searches or seizures by executing a waiver of his Fourth Amendment rights. *State v. Turek*, 150 Idaho 745, 749, 250 P.3d 796, 800 (Ct. App. 2011). However, because a waiver acts as a form of consent, "the state must conform its search to the limitations placed upon the right granted by the consent." *Id.*; *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008); *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004).

Police may also search an automobile without a warrant under the automobile exception when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Gallegos*, 120 Idaho 894, 897-98, 821 P.2d 949, 952-53 (1991). The automobile exception is based both upon the automobile's ready mobility, which is deemed an exigency sufficient to excuse the warrant requirement once probable cause for the search is clear, and upon the lesser expectation of privacy in an automobile as compared to the privacy interest in a home. *California v. Carney*, 471 U.S. 386, 390-92 (1985); *State v. Bottelson*, 102 Idaho 90, 93, 625 P.2d 1093, 1096 (1981). Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982).

Shearin's contention that his defense attorney could have obtained suppression based on illegality of the vehicle search fails for several reasons. First, Shearin argues only that the district court erred by holding that the search of his car performed by police officers fell within

5

the scope of his Fourth Amendment waiver; he has not challenged the other alternative basis of the district court's ruling--the automobile exception to the warrant requirement. The court expressly held that the police officers had probable cause to search the trunk of the vehicle, which is an entirely separate justification for the warrantless search. The scope of Shearin's Fourth Amendment waiver is immaterial to the automobile exception. Where an appellant fails to challenge one of multiple alternative grounds upon which a judgment has been granted, we are obligated to affirm. *Cuevas v. Barraza*, 155 Idaho 962, 964-65, 318 P.3d 952, 954-55 (2014).

Moreover, we conclude that the district court's application of the automobile exception to the warrant requirement was proper. The officers had probable cause to believe that Shearin had stolen items from the retail establishment because of the report from the store and the Nike shirt seen in plain view in the passenger compartment. Probable cause extended to the trunk of the vehicle because officers had reliable information showing that Shearin had stolen numerous items, in addition to the shirt in the front seat, and had traveled from store to store by car.

Finally, as to the search of Shearin's home, from Shearin's brief we discern two potential claims of error. The first is a claim that items found in the residential search should be excluded as "fruit of the poisonous tree." That rule applies when "evidence has been recovered as a result of the exploitation of" a prior, unlawful search or seizure. *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). This claim fails because the prior search of his vehicle was not unlawful.

Second, Shearin reasserts his contention that because his Fourth Amendment waiver consented only to searches by "any agent of Field and Community Services," it did not authorize searches by police officers. He contends that his parole officer impermissibly acted as a "stalking horse" for police and argues that the police officers on scene impermissibly used his suspected parole violation to avoid the warrant requirement.

In *State v. Vega*, 110 Idaho 685, 688, 718 P.2d 598, 601 (Ct. App. 1986), this Court cited "stalking horse" cases from the United States Court of Appeals for the Ninth Circuit and said, "it is impermissible for the police to use parole officers in lieu of a warrant to search, when conducting a criminal investigation, but nothing precludes mutually beneficial cooperation

6

between law enforcement officials and parole officers."[2]   Here, the lower court correctly concluded that law enforcement and the police were permissibly working in unison:

> The Court finds that the supervisor and the probation officer . . . were not "stalking horses" for a police investigation but had legitimate concerns regarding the petitioner's conduct on probation.  Further, the Court finds that given the authority granted to them by the supervisor and taking into account all the surrounding circumstances, the police were acting as "agents" of Field and Community Services pursuant to the search condition in the petitioner's parole agreement, of which he was fully aware.

In this case, parole personnel actively participated in the investigation because the suspected conduct was relevant to Shearin's adherence to conditions of parole.  At the time of the lawful vehicle search, parole officers had received credible information that a parolee was engaging in repeated, felonious conduct.  In response, a parole officer personally went to the scene to participate in the investigation and appears to have directed the search of the home.  Because evidence supports the finding that the police did not misuse the authority of parole officers, but that the two acted cooperatively, we find no error in the district court's determination.

Lastly, Shearin complains that the district court erred by relying upon cases addressing the Fourth Amendment rights of probationers because he is a parolee.  This argument is meritless.  In *Samson v. California*, 547 U.S. 843, 855 (2006), the Court held that its rulings regarding probationers could be extended, *a fortiori*, to parolees because, in aggregate, parolees are more dangerous and require more supervision.  More specifically, it held that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850.

---

[2]   In *State v. Owsley*, 128 Idaho 786, 788, 918 P.2d 1231, 1233 (Ct. App. 1996), the Court declined to determine whether a "stalking horse" claim may survive when a probationer has executed a Fourth Amendment waiver.  Moreover, our decision in *State v. Peters*, 130 Idaho 960, 963, 950 P.2d 1299, 1302 (Ct. App. 1997) tends to show that the probation exception to the warrant requirement and the consent exception to the warrant requirement are analyzed distinctly.   However, in *State v. Misner*, 135 Idaho 277, 280, 16 P.3d 953, 956 (Ct. App. 2000), we described a situation in which a "stalking horse" argument might prevail despite the existence of a Fourth Amendment waiver.  We need not determine the scope of a permissible "stalking horse" claim in this appeal as we may affirm the decision of the district court on the grounds asserted by the State in the district court.

For all of the foregoing reasons, the district court did not err in denying Shearin's claim that his defense counsel was ineffective for failing to file a suppression motion.

**B.**     **District Court's Denial of Claim That Counsel Failed to File an Appeal Was Invited Error**

In her argument on this claim before the district court, Shearin's post-conviction counsel said:

> I believe I have to show on my second count that my client requested that the public defender file an appeal.
> . . . I think that the law is settled that you have to affirmatively ask for it and that you have to make your wishes known to your defender that you want the appeal.
> . . . I think that the only way that the Court could provide relief on that issue is to find that Mr. Shearin's testimony that he, you know, chirped into the ear of his handling counsel that he desired an appeal on the way out of the courtroom is believable and meets the evidentiary burden in the case.

Consistent with those comments, the court said that Shearin had conceded there was only one means by which he could prevail on the claim that his attorney's failure to file an appeal amounted to ineffective assistance of counsel:

> The parties concede that if an equivocal inquiry concerning an appeal were made, but not clarified to the point of certainty, it would not be ineffective assistance for counsel to neglect to pursue the issue further or to file an appeal upon her best guess concerning her client's wishes.

The court continued: "This is the sole issue as to this claim because the parties agree that if an unequivocal request was made, and the appeal was not timely filed, the loss of the opportunity to appeal constitutes ineffective assistance of counsel without the need for further evidence."

As Shearin correctly points out on appeal, the standard applied in the district court was erroneous. In *Roe v. Flores-Ortega*, 528 U.S. 470, 478-80 (2000), the Supreme Court held that ineffective assistance of counsel may occur even when a petitioner did not unequivocally request that an appeal be filed:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning--advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of

8

deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra*, at 1034 and this page. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

. . . .

[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

Idaho courts are not authorized to rely upon incorrect concessions of legal standards or the application of those legal standards to a case. *See State v. Morgan*, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). Therefore, even if Shearin misunderstood the standard below, the district court should have applied the proper standard.

Nevertheless, not every error warrants reversal. In particular, "invited errors are not reversible." *State v. Pentico*, 151 Idaho 906, 915, 265 P.3d 519, 528 (Ct. App. 2011); *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996). In this case, "[T]he doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error." *Pentico*, 151 Idaho at 915, 265 P.3d at 528; *see also State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). Shearin's legal arguments below induced the court to decide the case upon an incorrect expression of the law. Therefore, he is estopped from arguing that the district court should have done otherwise.[3]

Our decision should not be read to approve of the practice adopted by Shearin's defense counsel and described as a common practice. She explained that she did not contact clients after sentencing and would file an appeal only if a client requested that she do so. The United States Supreme Court held in *Flores-Ortega* that the constitutional right to counsel frequently requires post-sentence consultation with clients even if the defendant has not expressed a desire to appeal.

Finally, to the extent that Shearin complains that the court erred when determining credibility, we find no error. As stated above, the credibility of the witnesses is a matter solely

---

[3]     We also note that it was not clear if the failure to consult claim was ever pleaded.

within the province of the district court. *Larkin*, 115 Idaho at 73, 764 P.2d at 440. We will not reweigh the credibility of witnesses on appeal.

**C.     Shearin Is Not Entitled to Any Relief Due to the Withdrawal of the State Appellate Public Defender**

On appeal, Shearin contends that the SAPD provided ineffective assistance of counsel when it withdrew from his case on appeal. This claim is meritless. First, Shearin has "no statutory or constitutional right to effective assistance of post-conviction counsel." *Murphy v. State*, 156 Idaho 389, 395, 327 P.3d 365, 371 (2014). Accordingly, even if counsel was ineffective, Shearin would not be entitled to relief. Second, Shearin has not demonstrated that appellate counsel's withdrawal constituted deficient performance inasmuch as he has not shown any meritorious issue that appellate counsel should have presented.

### III.

### CONCLUSION

Shearin has not demonstrated reversible error in the denial of relief on a petition for post-conviction relief. Accordingly, the judgment dismissing the petition for post-conviction relief is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**